IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA

Alexandria Division

|  |  |  |
|---|---|---|
| CHRISTOPHER GUERRE, et ux, | ) ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) ) | Civil Action No. 1:18-cv-1577 |
| LAURA NICHOLS, et ux, | ) ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION

THIS MATTER comes before the Court on Defendants' Motion to Dismiss (Dkt. 6) pursuant to Federal Rule of Civil Procedure 12(b)(6) and Plaintiffs' Motion to Supplement the Record (Dkt. 15).

Plaintiffs, Christopher and Sara Guerre, are farmers that are highly successful in the farm-to-table movement in the Northern Virginia area. Plaintiffs leased property from Defendants, Laura and Charles Nichols, for their farming operation. The property included a single-family residence, a significant acreage for farming, and assorted outbuildings. Plaintiffs leased the property for nearly seven years and made numerous improvements to it such as building a greenhouse and

installing a well. For the majority of the time when Plaintiffs lived on and worked Defendants' land the relationship between the parties was amicable.

In 2015, Ms. Guerre became pregnant and was visibly so by the fall of that year. Shortly after Defendants had an opportunity to observe Ms. Guerre, they wrote a letter on December 1, 2015 to Plaintiffs informing them that they would need to vacate the property by February 28, 2016. This letter stated that the Defendants could no longer afford the expense of maintaining the house and farm for rent. Plaintiffs requested an extension of time to vacate the property due to the time and expense it would take to do so, as well as the impending birth of their child. Defendants accommodated this request.

Plaintiffs' baby was born in March of 2016 and neither the mother nor the child tested positive for lead exposure. In July of 2016, Defendants had the residence tested for potential lead exposure risks. The report found that the levels of lead were within regulatory guidelines and that simple remediation would ensure it remained safe. Plaintiffs also paid for independent lead testing of the house with the same result. Defendants, however, informed Plaintiffs after the testing that they were still unwilling to take on the liability of having a young child in the house with the potential of exposure. Defendants told Plaintiffs they would need to vacate the residence by September

30, 2016 and would need to remove all farming equipment from the property by December 31, 2016. Plaintiffs again requested an extension and Defendants gave a ten-day grace period to complete removal of personal property from the house.

While the date to vacate was looming, Plaintiffs attempted to renegotiate the lease. Plaintiffs also informed Defendants that they believed the eviction was discriminatory and they had filed complaints with the Fairfax County Human Rights Commission (FHRC) and Department of Housing and Urban Development (HUD). Defendants responded that potential liability with the child in the house was the reason for the eviction. After being informed of the administrative complaints, Defendants sent Plaintiffs a letter informing them there would no longer be a ten-day grace period. Plaintiffs were unable to completely vacate the premises by the deadline and attempted to pay rent while they continued to remove their belongings.

Defendants did not accept these payments and instead brought suit in Virginia state court for unlawful detainer. The original suit was dismissed on procedural grounds and refiled. Defendants won this second suit and were awarded possession of the property and $305.00 in unpaid rent, though they had sought many thousands of dollars.

On January 4, 2017, FHRC[1] issued a report on the complaint filed by Plaintiffs finding that Defendants were subject to housing laws, had discriminated against Plaintiffs based on familial status, and retaliated against Plaintiffs for filing the complaints.

Fairfax County sued Defendants in state court on behalf of Plaintiffs. Plaintiffs initially intervened in that suit as was their right, but they nonsuited their intervention when their counsel withdrew from the case. During the trial, Plaintiffs were witnesses to put on evidence of the damages they had suffered. The County was partially successful in its case succeeding in proving discrimination on the merits but failing to prove retaliation. The state court awarded the County injunctive relief, as well as $2,500.00 that was for the benefit of Plaintiffs. In making his ruling, the state court judge found that the damages alleged by Plaintiffs were overstated and that $2,500.00 was the appropriate remedy. While both the County and Plaintiffs found that the award was too low, neither moved for additur or appealed the judgment.

Plaintiffs brought this suit alleging two counts: discrimination in violation of the Fair Housing Act, 42 U.S.C.

---

[1] FHRC holds a "substantial equivalency" certification from HUD allowing it to attempt to resolve fair housing complaints in its locality for HUD, including issuing reports of findings and bringing enforcement actions. 24 C.F.R. § 115.201.

4

§ 3604 (Count I); retaliation in violation of the Fair Housing Act, 42 U.S.C. § 3617 (Count II). Defendants have moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) contending it is barred by the doctrine of res judicata.

A motion to dismiss tests the sufficiency of the complaint. See Republican Party of N.C. v. Martin, 980 F.2d 943, 952 (4th Cir. 1992). The complaint must provide a short and plain statement showing that the pleader is entitled to relief, Fed. R. Civ. P. 8(a)(2), and it must state a plausible claim for relief to survive a motion to dismiss, Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). If the issue of claim preclusion clearly appears on the face of the complaint, then a 12(b)(6) motion is appropriate to consider the issue. Andrews v. Daw, 201 F.3d 521, 524 n. 1 (4th Cir. 2000); Richmond, Fredericksburg & Potomac R. Co. v. Forst, 4 F.3d 244, 250 (4th Cir. 1993).

Defendants contend that Plaintiffs are unable to recover on the claims brought in this suit due to the doctrine of res judicata as the facts and circumstances underlying this suit are the same as those that were the basis of the state court action. Plaintiffs admit that the same facts are the cause of action in both suits, but they argue that res judicata does not apply as the Fair Housing Act (FHA) provides dual enforcement scheme

5

where there is no preclusion between the different avenues of relief and exceptions to the application of res judicata apply in this case.

To begin, Plaintiffs rely on the dual enforcement scheme provided by the FHA. Under the FHA, an aggrieved person, i.e. one suffering housing discrimination, may file an administrative complaint with HUD or bring a personal civil action in an appropriate court. 42 U.S.C. §§ 3610(a)(1), 3613(a)(1)(A), 3613(c)(1). The aggrieved person may file their personal civil action "whether or not [an administrative] complaint has been filed under section 3610(a) of this title and without regard to the status of any such complaint." 42 U.S.C. § 3613(a)(2). The only limitation is that the private avenue of litigation is barred if "[HUD or the] local agency has obtained a conciliation agreement with the consent of the aggrieved person . . . [or] an administrative law judge has commenced a hearing on the record" regarding the complaint. 42 U.S.C. § 3613(a)(2) & (3). Plaintiffs contend that neither of these preclusive events occurred in this case.

To support their claim, Plaintiffs direct the Court to review a Third Circuit opinion from <u>Mitchell v. Cellone</u>, 389 F.3d 86 (3d Cir. 2004). In <u>Mitchell</u>, tenants sought to bring their own personal civil case against their landlord after requesting that the state agency that initially responded to

6

their claim drop its suit against the landlord. Id. at 88-89. The Third Circuit, as a matter of first impression, found that the lawsuit brought by the state agency was merely a continuation of the administrative enforcement action and thus did not automatically bar a subsequent suit by the tenants. Id. at 90-92. This was due to the dual enforcement scheme found in the FHA. Id. It is important to note, that in Mitchell no final and preclusive judgment had been rendered in the state agency's case as it was voluntarily dismissed. Id. at 88. The Third Circuit noted that if a final judgment had been rendered in the original case, the outcome would likely have been different. Id. at 91-92.

Plaintiffs' reliance on Mitchell is unavailing and actually cuts against their argument. The FHA allows for dual paths of enforcement of the anti-discrimination laws at issue. This scheme was meant to eradicate housing discrimination with the greatest efficiency by providing those with limited means multiple avenues for redress. See House Report (Judiciary Committee), Fair Housing Amendments Act of 1988, Pub. L. No. 100-430, 1998 U.S.C.C.A.N. 2173, 2178. The scheme allows the aggrieved person to select either private or administrative enforcement, and both may be selected at the outset. This scheme, however, is not meant to give aggrieved persons two bites at the apple. See House Report (Judiciary Committee) at

7

2198 ("this [scheme] is intended to prevent multiple adjudication of the same alleged discriminatory housing practice"). This desire for a single resolution is indicated in two places: (1) 42 U.S.C. § 3612(f) requires any administrative proceedings to cease at the commencement of a trial brought by the complainant, and (2) 42 U.S.C. § 3613(a)(3) prevents the bringing of a personal civil suit once an administrative law judge has begun hearing evidence. This dual enforcement scheme exists to allow an aggrieved person to pursue both administrative and private enforcement until one of the avenues has achieved resolution of the claim. Once resolution is achieved, the other path is foreclosed.

Thus, if the Court accepts the reasoning of the Third Circuit that the County's case in state court was a mere extension of the administrative process, it would by extension need to view the state court judge as an administrative law judge for purposes of the statute. This leads to the conclusion that Plaintiffs' instituted their private enforcement action in this Court too late as the administrative law judge in the administrative proceeding had begun to hear evidence on the matter, 42 U.S.C. § 3613(a)(3), and, indeed, the administrative avenue had achieved resolution of the claim. Plaintiffs' dissatisfaction with said resolution does not change the outcome and their right to private enforcement is foreclosed.

Even if the County's suit in state court did not act as a bar under the FHA, Plaintiffs' claims are still barred by res judicata.

To determine whether a state court judgment has preclusive effect, a court must apply the jurisprudence on res judicata from the state where the judgment was rendered. 28 U.S.C. § 1738; Matsushita Elec. Indus. Co. v. Epstein, 516 U.S. 367, 373 (1996); Laurel Sand & Gravel, Inc. v. Wilson, 519 F.3d 156, 161-62 (4th Cir. 2008) ("Generally, the preclusive effect of a judgment rendered in state court is determined by the law of the state in which the judgment was rendered."). This means the Court must apply Virginia law when determining if the County's lawsuit in state court has preclusive effect here.

Virginia law provides that "[a] party whose claim for relief . . . is decided on the merits by a final judgment, shall be forever barred from prosecuting any second or subsequent civil action against the same opposing party or parties on any claim or cause of action that arises from that same conduct . . . whether or not the legal theory or rights asserted in the second or subsequent action were raised in the prior lawsuit . . . or the particular remedies sought." Va. Sup. Ct. R. 1:6(a). This has been interpreted to mean that "if the underlying dispute produces different legal claims that can be joined in a single suit under the joinder statutes, Rule 1:6 provides that

9

they should be joined unless a judicially-recognized exception to res judicata exists." Funny Guy, LLC v. Lecego, LLC, 293 Va. 135, 150 (2017). In essence, claims that could have been brought in an initial suit, should have been brought in the initial suit. Id. at 143.

Plaintiffs offer three arguments for why res judicata should not apply in this case: (1) the County was not an aggrieved person and could not bring a claim under Section 3613, (2) Plaintiffs were unable to appeal the judgment in the County's suit, and (3) there was no privity between Plaintiffs and the County in the state court action.

First, Plaintiffs argue that the County could not have brought claims under Section 3613 in its state court action. This is because the County was not, and did not claim to be, an aggrieved person for purposes of the statute. This is true; however, it is also unavailing. The FHRC was authorized by county ordinance to bring suit on behalf of Plaintiffs in state court through the County Attorney to vindicate its own ordinances as well as the rights of Plaintiffs. The state court action was filed pursuant to Fairfax County Code § 11-1-11(b)(12), which is substantially equivalent to Section 3612 of the FHA. The County's suit was not filed as the private enforcement action of an aggrieved person, but as the

10

continuation of an administrative enforcement procedure similar to Section 3610. See, e.g., Mitchell, 389 F.3d at 90-92.

Plaintiffs argue that the County should be viewed more similarly to the Attorney General's role in enforcing the FHA as found in Section 3614. Under that Section, the Attorney General may sue in cases of "general public importance" to enforce anti-discrimination laws and conciliation agreements. 42 U.S.C. § 3614. Under this enforcement provision, the aggrieved person may intervene in the suit or may file separately, but if done separately, there is no preclusive effect between the Attorney General's and the aggrieved person's cases. See, e.g., Boyd v. United States, 345 F. Supp. 790, 793 (E.D.N.Y. 1972). Section 3614 is inapplicable in this case because suits brought under this provision are done in the interest of the general public and are meant to enforce the law generally. While relief may be sought for aggrieved persons, 42 U.S.C. § 3614(d)(1)(A), that is not the primary purpose of this Section. That is in contrast to Sections 3610 and 3612 which are meant to remedy specific complaints by specific aggrieved persons. The vindication of anti-discrimination laws in those suits is achieved primarily through providing redress to the aggrieved. Thus, the fact that the County could not bring a suit under Section 3613 does not prevent the preclusive effect of the state court action.

Second, Plaintiffs claim they were unable to appeal the state court judgment as they were not parties to that suit after nonsuiting their intervention. Typically, the inability of a party to appeal the prior judgment "strongly militates against giving [a judgment] preclusive effect." AKAK Corp. v. Commonwealth, 38 Va. App. 634, 640 (2002) (quoting Standefer v. United States, 447 U.S. 10, 23 (1980)). This is because the ability to appeal allows for greater confidence that the preclusive judgment is correct, and there is a fear that it may not be if there was no chance to appeal. See Standefer, 447 U.S. at 23. That fear is not present in this case as Plaintiffs likely had the opportunity to appeal.

In Virginia, "any person may present a petition for an appeal to the Supreme Court if he believes himself aggrieved . . . [b]y a final judgment in any other civil case." Va. Code 8.01-670(A)(3) (emphasis added). The legislature differentiated this language from "any party" used in the same code section, demonstrating its intent that truly any person may appeal a civil judgment without needing to have been a party in the litigation below. See Va. Code 8.01-670(B); see also Vulcan Materials Co. v. Board of Sup'rs of Chesterfield Cnty., 248 Va. 18, 24 (1994) (stating that any person may appeal a judgment if it denies them a personal or property right, legal or equitable).

Here, Plaintiffs would likely have been able to appeal the state court judgment as it affected their legal rights. This effect is demonstrated by the fact they were able to intervene as of right in the state court action and that damages were recovered solely for their benefit.[2] Because of this likely ability to appeal, there should be little fear in allowing the state court judgment to have preclusive effect.

Third, Plaintiffs argue there was a lack of privity between them and the County in the state court action. To begin, Plaintiffs direct the Court's attention to Taylor v. Sturgell, 553 U.S. 880 (2008), for a discussion of appropriate situations to apply preclusion against non-parties. This is in error as Taylor applies in cases involving federal-court judgments, not in all cases involving federal questions as Plaintiffs suggest. See id. at 891 ("The preclusive effect of a federal-court judgment is determined by federal common law."). Instead, as noted above, the Court must apply Virginia law on privity to determine whether preclusion may be applied against Plaintiffs. See Laurel Sand & Gravel, Inc., 519 F.3d at 162.

In Virginia, there is no single fixed definition of privity for purposes of res judicata and its existence is determined on

---

[2] Plaintiffs make a great deal of the fact that the damages check in the state court action was made payable to the County as opposed to them directly. This is primarily a factor of procedure and not a signal that their rights were not litigated in the prior suit. Plaintiffs acknowledge that the state court damages award would offset any recovery they may have had in this case which indicates that the same cause of action underlies both cases.

a case-by-case basis. State Water Control Bd. v. Smithfield Foods, Inc., 261 Va. 209, 214 (2001). For purposes of res judicata, the benchmark of privity is that a party's interest is "so identical" with another "that he represents the same legal right." Nero v. Ferris, 222 Va. 807, 813 (1981).

In the case at bar, the County filed its suit in state court on behalf of Plaintiffs and pursued damages remedies that were only available for the Plaintiffs' benefit. While Plaintiffs did not control the state court litigation, they had the ability to intervene and worked closely with the County as witnesses regarding damages they suffered as a result of Defendants' actions. Plaintiffs have pointed to the fact that the state court proceedings only involved violations of the county ordinances, not the FHA violations complained of here. This does not move Plaintiffs out of privity as the county ordinances have been deemed to be substantially equivalent to provisions of the FHA by HUD. Thus, they may be deemed legally equivalent for purposes of res judicata. These facts point to a conclusion that Plaintiffs were in fact in privity with the County in the state court action as the legal rights they raise here are "so identical" to the rights vindicated on their behalf in the state court action. Nero, 222 Va. at 813.

The Court notes that Plaintiffs have attempted to supplement the record with new evidence. This is inappropriate upon

14

consideration of a 12(b)(6) motion to dismiss as the Court may only look at the complaint and extrinsic documents that are integral to the complaint and are authentic. Goines v. Valley Cmty Servs. Bd., 822 F.3d 159, 166 (4th Cir. 2016). To be integral to the complaint, the extrinsic document must not merely be referenced, but the complaint must rely heavily on its terms and effect. Id. Here, the document Plaintiffs attempt to have considered was neither referenced directly by the complaint, nor does the complaint heavily rely on its terms or effect. As a result, the Court may not consider the supplemental document offered by Plaintiffs.

For the reasons mentioned, the Court concludes that Plaintiffs' claims are barred by the enforcement scheme laid out in the FHA and by the doctrine of res judicata under Virginia law. Therefore, dismissal is appropriate and Defendants' motion will be granted. Further, Plaintiffs' motion to supplement the record will be denied. An appropriate order shall issue.

/s/ Claude M. Hilton
CLAUDE M. HILTON
UNITED STATES DISTRICT JUDGE

Alexandria, Virginia
April 23, 2019